**FILED**
**CLERK**

4:34 pm, Nov 07, 2018

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
WOLO MANUFACTURING CORP.,

       Plaintiff,

   -against-

ABC CORP., d/b/a Vixenhorns.com, XYZ CORP.,
d/b/a Hookedontronics.com, AFTAK CORP., d/b/a
Aftakcorp.com, and ARIE FELDMAN,

       Defendants.
------------------------------------------------------------X

ORDER
17-CV-5333(SJF)(SIL)

FEUERSTEIN, District Judge:

I.  Introduction

  On September 12, 2017, plaintiff Wolo Manufacturing Corp. ("plaintiff" or "Wolo")

commenced this action against defendants ABC Corp., d/b/a Vixenhorns.com ("Vixen"); XYZ

Corp., d/b/a Hookedontronics.com ("Tronics"); Aftak Corp. ("Aftak"), d/b/a Aftakcorp.com; and

Arie Feldman ("Feldman") (collectively, "defendants"), asserting claims, *inter alia*, for copyright

infringement pursuant to the Copyright Act, 17 U.S.C. § 501, *et seq.*; trademark infringement,

false designation of origin and unfair competition under Section 43(a) of the Lanham Act, 15

U.S.C. § 1125(a); and trademark infringement and dilution, deceptive acts and practices, injury

to business reputation and dilution, and unfair competition under New York state law. On

December 19, 2017, plaintiff filed an amended complaint against defendants, asserting claims,

*inter alia*, for copyright infringement pursuant to the Copyright Act; trademark infringement,

false designation of origin, unfair competition, and false advertising pursuant to the Lanham Act;

and trademark infringement and dilution, deceptive acts and practices, injury to business

reputation and dilution, unfair competition, misappropriation and unjust enrichment under New

York state law. Pending before the Court is defendants' motion: (i) to dismiss plaintiff's claims against Feldman in the amended complaint in their entirety pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction; and (ii) for partial dismissal of plaintiff's claims against the remaining defendants in the amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for relief.[1] For the reasons set forth below, defendants' motion is granted in part and denied in part.

II.      Background

     A.      Factual Allegations[2]

Plaintiff "designs and sells a variety of automotive accessories, including horns, alarms, sirens, warning lights, and light bars[,]" (Amended Complaint ["Am. Compl."], ¶ 18), and its goods "are sold by leading automotive goods retailers such as Pep Boys, AutoZone, O'Reilly Auto Parts, and Advance Auto Parts." (*Id.*, ¶ 19). Plaintiff "additionally sells its products directly to customers via its own website, https://wolo-mfg.com/ ('Wolo's Website') and through third party websites, such as Amazon." (*Id.*, ¶ 20). "Wolo's Website contains and displays photographs of its authentic goods[,]" as well as "written descriptions, details and specifications relating to its products, and . . . written instructions and videos demonstrating the installion [sic]

---

[1] This case was initially assigned to the Honorable Leonard D. Wexler, former United States District Judge. On April 5, 2018, it was reassigned to the Honorable Arthur D. Spatt, United States District Judge. On May 4, 2018, it was reassigned to the undersigned.

[2]   The factual allegations in the amended complaint are assumed to be true for purposes of this motion, "unless contradicted by more specific allegations or documentary evidence," *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011), and do not constitute findings of fact by the Court.

of its products." (*Id.*, ¶¶ 21-22).

Plaintiff alleges, "[u]pon information and belief," (i) that Feldman is "the owner, president, officer, manager, member, operator and/or is directing the business and actions, of the Defendant Entities[,]"[3] (Am. Compl., ¶¶ 6, 13, 35), and that he "alone directs and controls all of the activities of the Defendant Entities[,]" (*id.*, ¶ 35); (ii) that "Defendants contract to supply goods and/or services, and/or transact business in New York and within this judicial district; and the tortious acts of Defendants complained of in this Complaint, including, without limitation, the willful and illegitimate use of Wolo's copyrights, trademarks and goodwill, have caused harm to Wolo within this judicial district[,] [so] personal jurisdiction exists over Defendant [sic] pursuant to CPLR §§ 301 and 302[,]" (*id.*, ¶ 14); and (iii) that "Defendants' customers include residents of New York State and Defendants have shipped goods into New York State and within this Judicial District, including goods which form the basis of this Complaint." (*Id.*, ¶ 16). Plaintiff further alleges that defendants "maintain 'active' websites which permits [sic] customers to purchase goods from [them] directly from their websites." (*Id.*, ¶ 15).

According to plaintiff, defendants are its "direct competitors" and "sell a variety of automotive horns and related accessories." (Am. Compl., ¶¶ 36, 66). Plaintiff alleges, "[u]pon information and belief," (i) that "Vixen and/or Feldman (and/or any combination of Defendants), own(s) and operate(s) the website https://vixenhorns.com (the 'Vixen Website'), which offers for sale and sells a variety of automotive horns and related accessories[,]" (*id.*, ¶ 37); (ii) that

---

[3] The amended complaint refers to the corporate defendants Vixen, Tronics and Aftak, collectively, as the "Defendant Entities." (*See* Am. Compl. at p. 1). For the sake of convenience, the Court similarly refers to the corporate defendants, collectively, as the "Defendant Entities" in this order.

"Tronics and/or Feldman (and/or any combination of Defendants), own(s) and operate(s) the website http://www.hookedontronics.com (the 'Tronics Website'), which offers for sale and sells a variety of automotive horns and related accessories, including Vixen automotive products[,]" (*id.*, ¶ 38); (iii) that "Aftak and/or Feldman (and/or any combination of Defendants), own(s) and operate(s) the website http://www.aftakcorp.com (the 'Aftak Website'), which offers for sale and sells a variety of automotive horns and related accessories, including Vixen automotive products[,]" (*id.*, ¶ 39); (iv) that "Defendants (and/or any combination of Defendants) offer for sale and sells their products on Amazon.com and Jet.com[,]" (*id.*, ¶ 40); and (v) that "Defendants (or a combination thereof)" use the Vixen Website, the Tronics Website and the Aftak Website "to advertise and promote Defendants' automotive products and accessories." (*Id.*, ¶¶ 43, 46, 49).

Plaintiff "owns U.S. Copyright Registration No. TX 8-391-412 (the 'Copyright Registration') for two-dimensional artwork and text material (collectively, the 'Work')." (Am. Compl., ¶ 23 and Ex. 1; *see also Id.*, ¶¶ 69-70). Specifically, the Work consists of "Installation Instructions for Model 853 Philly Express Train Horn." (*Id.*, Ex. 1). The Certificate of Registration indicates, *inter alia*, that the effective date of registration for the Work is August 21, 2017, and the date of first publication of the Work is December 31, 2008. (*Id.*; *see also Id.*, ¶ 26).

"The Work was and is reproduced and distributed by Wolo with certain of its products and is additionally displayed and/or available for download on the Wolo Website." (Am. Compl., ¶ 24). Plaintiff alleges, *inter alia*, (i) that "[w]ithout license or authority from Wolo, Feldman (and/or any combination of Defendants) caused Vixen[:]" (A) "to copy Wolo's Work, and without license or authority from Wolo, Vixen reproduced and published two (2) different unauthorized copies of the Work (one for Vixen's horn model number VXH4114 and the other

for Vixen's horn model number VXH4114B) (collectively the 'Infringing Works')[,]" (*id.*, ¶ 41 and Ex. 3), and (B) "to publish and make the Infringing Works available for view, display, and further copying by the public by posting it to the Vixen Website[,]" (*id.*, ¶ 42 and Ex. 4); and (ii) that "[b]y publishing and displaying the Infringing Works on the Vixen Website, Defendants (or a combination thereof) have utilized the Work without license or authority from Wolo, thereby infringing Wolo's Copyright, to generate revenue through the marketing, advertising, and sale of Defendants' goods." (*Id.*, ¶ 44).

Plaintiff similarly alleges: (i) that "[w]ithout license or authority from Wolo, Feldman (and/or any combination of Defendants)" caused Tronics and Aftak "to publish and make the Infringing Works available for view, display, and further copying by the public by posting it" to the Tronics Website and Aftak Website, respectively, (Am. Compl., ¶¶ 45, 48 and Ex. 5 and 6); and (ii) that "[b]y publishing and displaying the Infringing Works" on the Tronics Website and Aftak Website, respectively, "Defendants (or a combination thereof) have utilized the Work without license or authority from Wolo, thereby infringing Wolo's Copyright, to generate revenue through the marketing, advertising, and sale of Defendants' goods." (*Id.*, ¶¶ 47, 50).

In addition, plaintiff alleges: (i) that "Defendants (or a combination thereof) copied [its] Work, and without license or authority from [it], published unauthorized copies of the Work and made it available for view, display, and further copying by the public by posting it to Amazon.com and Jet.com in connection with the sale of Defendants' products[,]" (Am. Compl., ¶ 51 and Ex. 7); (ii) that, "[u]pon information and belief, Defendants (or a combination thereof) use the Infringing Work to advertise and promote Defendants' automotive products and accessories offered for sale and sold on Amazon.com and Jet.com[,]" (*id.*, ¶ 52); (iii) that "[b]y

publishing and displaying the Work on Amazon.com and Jet.com postings, Defendants (or a combination thereof) have utilized the Work without license or authority from Wolo, thereby infringing Wolo's Copyright, to generate revenue through the marketing, advertising, and sale of Defendants' goods[,]" (*id.*, ¶ 53); and (iv) that, "[u]pon information and belief, due to the verbatim copying and display of the Work, Defendants were aware of and obtained the Work from Wolo and intentionally copied the Work." (*Id.*, ¶ 54).

Plaintiff further alleges that "[i]n connection with its business and products, [it] has adopted and used, and . . . is the owner of numerous registered and common law trademarks." (Am. Compl., ¶ 28; *see also Id.*, ¶ 83). The amended complaint identifies one (1) such trademark as "the carbon fiber-look mark -- the ornamental appearance of carbon fiber style graphics applied in an arbitrary fashion to a portion of a Wolo-product (the 'Mark'),"[4] (*id.*, ¶ 29), and attaches a picture of one (1) of its products that uses the Mark, "the Wolo Bandido Power Air Horn (the 'Bandido Horn')." (*Id.*, ¶ 30 and Ex. 2). Plaintiff alleges, *inter alia*, that the Mark "is currently in use and has never been abandoned[,]" (*id.*, ¶ 32); and that it "extensive[ly] use[s] and promot[es]" the Mark, and uses "'look for' advertising and trademark marking pertaining to the Mark. . . ."[5] (*Id.*, ¶ 33).

According to plaintiff, "Defendants (or a combination thereof) are offering for sale and

---

[4] In its memorandum of law in opposition to defendants' motion, plaintiff identifies the "Mark" as "the ornamental appearance of *certain of its horn products* resulting from the use of the carbon fiber look." (*See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss ["Plf. Opp."] at 14) (emphasis added).

[5] Plaintiff also conclusorily asserts, *inter alia*, that the Mark is inherently distinctive and strong, (Am. Compl., ¶¶ 32, 84, 86); and has acquired distinctiveness and a secondary meaning. (*Id.*, ¶¶ 33, 85). Such conclusory assertions are not entitled to the assumption of truth. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

selling a power air horn designated as the VIXEN HORNS VXH1608CB COMPACT DUAL TONE MOTORCYCLE ELECTRIC AIR HORN CARBON-FIBER BLACK (the 'Infringing Horn')." (Am. Compl., ¶ 55 and Ex. 8). Plaintiff alleges, *inter alia*, (i) that "Defendants (or a combination thereof) have used and are using Wolo's Mark on the Infringing Horn, and have created and are creating a likelihood of confusion . . . and/or have created and are creating an impression that Defendants otherwise are affiliated with or sponsored by Wolo," (*id.*, ¶ 56); (ii) that "[w]ithout the authorization or consent of Wolo, and after Wolo built up extensive and valuable business and goodwill in connection with the Mark, Defendants commenced to offer for sale and sell the Infringing Horn[,]" (*id.*, ¶ 57); (iii) that, "[u]pon information and belief, each of the Defendants were aware of Wolo and Wolo's use of its Mark in connection with Wolo's goods at the time Defendants adopted and began to use Wolo's Mark on the Infringing Horn[,]" (*id.*, ¶ 58); (iv) that "Wolo and Defendants have been, and are, engaged in the business of providing similar products to the same classes of customers, through the same and/or similar channels of trade[,]" (*id.*, ¶ 59); and (v) that, "[u]pon information and belief, Defendants adopted and commenced use of Wolo's Mark on the Infringing Horn with the intent to deceive consumers and to cause confusion among purchasers for the purpose of benefitting from the goodwill and public recognition associated with Wolo's Mark and diverting sales from Wolo to Defendants." (*Id.*, ¶ 60).

In addition, plaintiff alleges, *inter alia*, (i) that "Defendants made false and/or misleading statements or representations of fact in connection with its products, and caused such statements to enter into interstate commerce by placing the statements on its websites and other marketing and promotional materials[,]" (Am. Compl., ¶ 63); (ii) that "[t]he false statements related to the

inherent qualities and characteristics of Defendant's horn products, including statements regarding the loudness and the construction or materials of certain Defendants' horn products[,]" (*id.*, ¶ 64); (iii) "that "[t]he false statements were material, actually deceived or had the tendency to deceive a substantial segment of the potential customers for Defendants' products, and to influence such customers' purchasing decisions[,]" (*id.*, ¶ 65); (iv) that since "Wolo and Defendants are direct competitors in the market for horn products[,] . . . Defendants' false statements directly and proximately harmed Wolo, harmed Wolo's ability to compete with Defendants, and deprived Wolo of sales and resulting profits[,]" (*id.*, ¶ 66); and (v) that "[w]ithout permission or authorization from Wolo, Defendants obtained and used, via posting on their websites, sound recordings of Wolo's horns, which recordings were commissioned, paid for, and made specifically for Wolo, for Wolo's exclusive use and ownership." (*Id.*, ¶ 67).

B.    Procedural History

On September 12, 2017, plaintiff commenced this action against defendants asserting claims, *inter alia*, for copyright infringement pursuant to the Copyright Act; trademark infringement, false designation of origin and unfair competition under Section 43(a) of the Lanham Act; and trademark infringement and dilution, deceptive acts and practices, injury to business reputation and dilution, and unfair competition under New York state law. On December 19, 2017, plaintiff filed an amended complaint against defendants, asserting claims, *inter alia*, for copyright infringement pursuant to the Copyright Act (Counts I and II of the amended complaint); trademark infringement and false designation of origin pursuant to Section 43(a)(1)(A) of the Lanham Act (Count III of the amended complaint); unfair competition under

Section 43(a)(1)(A) of the Lanham Act (Count IV of the amended complaint)[6]; false advertising and misrepresentations under Section 43(a)(1)(B) of the Lanham Act (Counts VII and VIII of the amended complaint); trademark infringement in violation of Section 133 of the New York General Business Law, dilution and injury to business reputation in violation of Section 360-*l* of the New York General Business Law, and deceptive acts and practices in violation of Section 349 of the New York General Business Law (collectively, Count V of the amended complaint); trademark infringement and unfair competition in violation of the common law of the State of New York (Count VI of the amended complaint); and misappropriation, unfair competition and unjust enrichment under the common law of the State of New York (Count IX of the amended complaint).

With respect to its first cause of action alleging copyright infringement, plaintiff alleges, *inter alia*, (i) that defendants "have infringed [its] Copyright in and to the Work embodied in the Copyright Registration, by copying, publishing and displaying the Work and/or photographs, text, and/or two-dimensional artwork which are identical and/or substantially similar to the Work on the Vixen Website, Tronics Website, Aftak Website and various Amazon.com and Jet.com postings," (Am. Compl., ¶ 71); and (ii) that defendants' acts "have caused irreparable harm and damage to Wolo and will continue to cause irreparable harm to Wolo, and have caused Wolo to suffer monetary damage in an amount thus far not determined." (*Id.*, ¶ 74). Plaintiff further alleges, "[u]pon information and belief," (i) that defendants' "conduct and infringement of Wolo's rights have been willful and deliberate[,]" (*id.*, ¶ 72); and (ii) that defendants' "actions

---

[6] However, plaintiff has withdrawn Count IV of the amended complaint in its entirety. (*See* Plf. Opp. at 13, 24). Accordingly, Count IV of the amended complaint is dismissed in its entirety pursuant to Rule 41(a) of the Federal Rules of Civil Procedure.

have interfered with Wolo's sales of its products and accessories, have unfairly diverted revenue to Defendants and have caused Wolo monetary damage." (*Id.*, ¶ 73).

With respect to its second cause of action alleging copyright infringement, plaintiff alleges: (i) that "[i]n addition to the Work, Wolo owns other rights in and to numerous other copyrighted works (the 'Other Works')," (Am. Compl., ¶ 79); (ii) that, "[u]pon information and belief, Defendants have infringed Wolo's copyright in and to the Other Works, by copying, publishing and displaying photographs, text, and/or two-dimensional artwork which are identical and/or substantially similar to the Other Works, on other Amazon.com and Jet.com postings and/or other websites associated with and/or owned by Defendants," (*id.*, ¶ 80); and (iii) that "[t]he full nature and extent of Defendants' copying is not currently known to Wolo, and Wolo seeks leave to amend its Complaint against Defendants to include all instances of copyright infringement when Wolo learns of the full nature and extent of Defendants' copying through the discovery process."[7] (*Id.*, ¶ 81).

With respect to its third cause of action for trademark infringement and false designation

---

[7] Plaintiff also seeks leave to amend its amended complaint "to allege the full nature and extent of . . . [its] monetary damages [caused by defendants' Lanham Act violations] if, when and to the extent the damages are ascertained." (Am. Compl., ¶ 96). In a letter, dated January 9, 2018 (the "Pre-Motion Letter"), directed to Judge Wexler in response to defendants' letter seeking a pre-motion conference in accordance with Judge Wexler's individual rules, plaintiff indicates, in relevant part: "Defendants are correct insofar as they assert that Count II is a 'placeholder.' . . . Wolo identified [defendants'] copying [of the Work], sought and obtained a copyright registration, and alleged infringement in Count I of the Amended Complaint. Wolo has a good faith basis to believe that Defendants copied other of [its] instructions. But without the benefit of discovery, Wolo cannot know the full extent of the copying. Count II is intended to put the Court and Defendants on notice that, after relevant discovery, [it] intends to seek registration for its additional copied instruction sheets. So long as Wolo is permitted to amend its complaint to assert these additional claims, Wolo leaves the disposition of Count II to the Court's discretion." (Docket Entry ["DE"] 22).

of origin under Section 43(a)(1)(A) of the Lanham Act, plaintiff alleges, *inter alia*, (i) that defendants' "use of the Mark on the Infringing Horn creates a likelihood of confusion with Wolo, Wolo's Mark, and Wolo's goods offered and sold in connection with the Mark[,] . . . [and] is identical to and confusingly similar with the Mark[,]" (Am. Compl., ¶¶ 87-88); (ii) that "Wolo's goods and services are offered, sold, distributed, furnished and/or advertised to the same or similar classes of purchasers as Defendants' goods and services[,]" (*id.*, ¶ 89); and (iii) that defendants' acts and conduct "are willful, unfair, untrue and deceptive, in that they intend to mislead, deceive and confuse, and have had and continue to have the result of misleading, deceiving and confusing the public to believe that Defendants, Defendants' goods, and/or the Infringing Horn are affiliated with, sponsored or controlled by Wolo[,] . . . [and] Defendants attempt to trade upon, and gain public acceptance and other benefits from Wolo's favorable reputation, which has accordingly, been placed at risk by Defendants' illegal acts and conduct." (*Id.*, ¶ 92; *see also Id.*, ¶ 93). Plaintiff further alleges, "[u]pon information and belief," (i) that defendants "were aware of Wolo and of Wolo's use of its Mark prior to the time [they] selected and commenced use of Wolo's Mark on the Infringing Horn[,]" (*id.*, ¶ 90); and (ii) that "based upon, without limitation, the similarity of Wolo's Mark and the Infringing Horn, and Defendants' prior knowledge of Wolo and Wolo's use of its Mark, Defendants adopted and used Wolo's Mark with the intent to cause confusion among consumers and with the purpose of benefitting from Wolo's reputation and goodwill. . . ." (*Id.*, ¶ 91).

With respect to its fifth cause of action under state law, plaintiff alleges, *inter alia*, that defendants' acts: (i) "constitute willful, deceptive acts and practices in the conduct of business, trade and/or commerce, in violation of New York Gen. Bus. Law § 349," (Am. Compl., ¶ 111);

(ii) "will create a likelihood of injury to the public image and business reputation of Wolo, in that the public will likely associate Defendants [sic] goods with Wolo's goods, and cause the dilution of the distinctive quality of Wolo's Mark . . . in violation of New York Gen. Bus. Law § 360-*l*," (*id.*, ¶ 112); and (iii) "were calculated and designed intentionally to mislead and deceive the public and trade as to the identity of Defendants or as to the connection of Defendants with Wolo, in violation of New York Gen. Bus. Law § 133." (*Id.*, ¶ 113).

With respect to its sixth cause of action for unfair competition, plaintiff alleges, *inter alia*, (i) that, "[u]pon information and belief, Defendants have intentionally appropriated Wolo's Mark . . . with the intent of causing confusion, mistake and deception as to the source of Defendants' goods, with the intent to pass-off their goods as those of Wolo, and the bad faith intent to take advantage of Wolo's reputation, good will, and efforts and expenditures," (Am. Compl., ¶ 116); and (ii) that defendants' acts: (A) "have created a likelihood of confusion between Defendants and Wolo and/or Defendants' products and Wolo's Products[,]" (*id.*, ¶ 117), (B) "have injured and will continue to injure Wolo, by depriving it of sales of its genuine goods, by injuring its business reputation, and by passing off Defendants' goods as Wolo's genuine goods," (*id.*, ¶ 118), and (C) "have caused irreparable harm and damage to Wolo and have caused Wolo monetary damage in an amount Wolo has not yet determined." (*Id.*, ¶ 119).

With respect to its seventh cause of action for false advertising and misrepresentations under Section 43(a)(1)(B) of the Lanham Act, plaintiff alleges, *inter alia*, (i) that, "[u]pon information and belief, certain of Defendants' horn products are manufactured by the same manufacturer as are Wolo's comparative horn products[,] . . . the manufacturer of Defendants' horn products does not make any representations to Defendants as to the loudness of the horns

Defendants purchase[,] . . . [and] Defendants have never conducted any loudness testing on its [sic] products[,]" (Am. Compl., ¶¶ 122, 124, 128; *see also id.*, ¶ 130); (ii) that "[t]he manufacturer of Wolo's horn products does not make any representations to Wolo as to the loudness (by decibel or 'dB' rating) of the horns [it] purchases[,]" (*id.*, ¶ 123); (iii) that defendants "have represented that the manufacturer and/or other source of [their] horn products provided [them] with the dB ratings for [their] horns, but [they] have refused to provide Wolo with any such evidence[,]" (*id.*, ¶ 125); (iv) that plaintiff, "upon its own initiative and at its own effort and cost, had the loudness (dB rating) of certain of its horn products tested[,]" (*id.*, ¶ 126); (v) that "Wolo's representations and advertisements as to the loudness of its horns conform with the results of the loudness testing conducted by Wolo[,]" (*id.*, ¶ 127); (vi) that "Decibels are logarithmic units, such that a seemingly small difference in dB rating can represent a large difference in perceived loudness[,]" (*id.*, ¶ 129); and (vii) that "Defendants represent and advertise that their horn products are louder than Wolo's horn products[,]" notwithstanding that, "upon information and belief[,] [the horns] are identical to and purchased from the same manufacturer as the comparative Wolo horn products." (*Id.*, ¶ 130). Specifically, plaintiff alleges, *inter alia*, (i) that its horn "model 125 appears to be identical to Defendants' model VXH2112MAR-W[,] [insofar as] [b]oth are described as 12-volt, dual trumpet electric horns, made of stainless steel and painted white[,]" (*id.*, ¶ 131 and Ex. 9); (ii) that, "[u]pon information and belief," both of those horn models "are manufactured by the same manufacturer and are identical in all material respects[,]" (*id.*, ¶ 132); (iii) that "[b]ased on testing conducted by Wolo, [it] represents the loudness of its model 125 horn to be 114.2 dB[,] [whereas] Defendants represent the loudness of their rival model VXH2112MAR horn to be 125 dB[,]" (*id.*, ¶ 133);

(iv) that, "[u]pon information and belief," defendants' representation as to the loudness of their horn model VXH2112MAR is either "literally false" or, in the alternative, "misleading in the context of Defendants' relevant web pages," (*id.*, ¶¶ 134-135); (v) that, "[u]pon information and belief, and without limitation, Defendants similarly have misrepresented the loudness of the following models: VXH4114; VXH1608; VXH1002C; and Vixen VXH6803R[,]" (*id.*, ¶ 136); and (vi) that, "[u]pon information and belief," defendants' representation as to the loudness of those horn models are either "literally false" or, in the alternative, "misleading in the context of Defendants' relevant web pages, insofar as Defendants misrepresent and/or omit the conditions upon which the loudness of the horns were tested." (*Id.*, ¶¶ 137-138).

With respect to its eighth cause of action for false advertising and misrepresentation under Section 43(a)(1)(B) of the Lanham Act, plaintiff alleges, *inter alia*, (i) that some of the horns that defendants represent in their advertisements "as being 'CHROME' . . . are not made of chrome or are chrome plated[,]" including Vixen models: VXH2112MAR; VXH1212MAR-C; and VXH1112MAR-C," (Am. Compl., ¶ 144); and (ii) that, "[u]pon information and belief," defendants' representations that those models are "chrome" are either "literally false" or, in the alternative, "misleading in the context of Defendants' relevant web pages." (*Id.*, ¶¶ 145-146).

In addition, with respect to both of its claims under Section 43(a)(1)(B) of the Lanham Act, plaintiff alleges, *inter alia*, (i) that defendants "caused the false and misleading statements to enter into interstate commerce, by placing [them] on their websites, catalogs, sell sheets, and the like, and by distributing same in interstate commerce[,]" (*id.*, ¶¶ 139, 147); (ii) that such statements "are material in the context of the advertising and sale of Defendants' horns, as [they] go to the inherent nature and characteristics of the horns, and are likely to influence the

purchasing decisions of the relevant consumers[,]" (*id.*, ¶¶ 140, 148); and (iii) that plaintiff "has been and is likely to be damaged by Defendants' false and misleading statements, including without limitation damage to Wolo's reputation and good will and the loss of sales and profits." (*Id.*, ¶¶ 141, 149).

With respect to its ninth cause of action, plaintiff alleges, *inter alia*, (i) that in order "[t]o better advertise and promote its horns and thereby maximize its sales and profits, Wolo, at its own cost and effort, commissioned the professional sound recordings of certain of its horns[,]" (Am. Compl., ¶ 152), which it "posted on its web site and related YouTube pages so that potential customers could hear the horns prior to purchasing[,]" (*id.*, ¶ 153); (ii) that "[a]s part of the recording process, Wolo elected how many times to sound its horns and for how long to sound its horns, giving each sound recording a unique 'finger print[,]'" (*id.*, ¶ 154); and (iii) that "[w]ithout the authorization or permission from Wolo, Defendants posted Wolo's sound files on Defendants' web pages, in connection with the advertisement and offer for sale of Defendants' horns[,] . . without incurring any costs or expending its [sic] own efforts," (*id.*, ¶¶ 155-160), thereby "misappropriat[ing]" plaintiff's sound recordings, costs and efforts; obtaining a benefit from plaintiff's "expenditures and efforts;" and unfairly competing with plaintiff. (*Id.*, ¶¶ 156-160). Plaintiff further alleges, *inter alia*, that, "[u]pon information and belief, Defendants have intentionally appropriated Wolo's sound recordings with the intent of causing confusion, mistake and deception as to the source of Defendants' goods, with the intent to pass-off their goods as those of Wolo, and with the bad faith intent to take advantage of Wolo's reputation, good will, and efforts and expenditures." (*Id.*, ¶ 161).

Plaintiff seeks, *inter alia*, (i) judgment declaring that defendants' conduct violates the

Copyright Act, Section 43(a) of the Lanham Act, Sections 133, 349 and 360-*l* of the New York General Business Law and the common law of the State of New York; (ii) an accounting of all of defendants' "gains, profits, and other benefits derived as a result of its [sic] infringement of the Copyright in the Work[,]" (Am. Compl., at 26, ¶ B); (iii) the greater of either: (a) the actual damages it suffered as a result of defendants' alleged copyright infringement and "any additional profits of Defendants, or (b) for each infringement found by the Court, the statutory damages provided for under Section 504(c) of Title 17, United States Code, including the maximum allowable statutory damages for willful infringement[,]"[8] (*id.* at 26-27, ¶ C); (iv) compensatory damages, treble damages, punitive damages, and disgorgement of defendants' profits; (v) injunctive relief (a) restraining and enjoining defendants from (1) infringing the copyright in the Work; (2) using "Wolo's Mark, any confusingly similar mark, or any other marks which are similar to or are colorable imitations of Wolo's Mark, alone or as a part of, or together with, any other designs, word or words, trademark, service mark, trade name, trade dress or other business or commercial designation or any logo, symbol or design[,]" (*id.* at 28, ¶ M(a)); (3) "[c]ommitting any act which, in and of itself, or from the manner or under the circumstances in which it is done amounts to false designation of origin, false description or false representation of Defendants' goods and services[,]" (*id.*, ¶ M(b)); (4) making false claims about the loudness and/or material of defendants' products; (5) using plaintiff's sound recording files of its horns; and (6) "[o]therwise unfairly competing with Wolo, committing dilution or infringement of Wolo's rights, and falsely advertising Defendants' products[,]" (*id.*, at 29, ¶ M(e)), and (b)

---

[8] Although in its Pre-Motion Letter, plaintiff "consents to the dismissal of its prayer for statutory damages for any copyright violation alleged in Count I[,]" (DE 22 at 2, ¶ D), it opposes the dismissal of such claim in its memorandum of law in opposition to defendants' motion.

requiring defendants (1) "to remove and [sic] any and all portions of the Work from any and all websites and/or online posting and/or offerings that are owned and/or operated by Defendants jointly and/or severally[,]" (*id.* at 27, ¶ D); and (2) "to notify their respective commercial associates, suppliers and customers of this Order," (*id.* at 29, ¶ T); and (vi) an award of costs, reasonable attorney's fees and prejudgment interest. (*Id.* at 26-30). Plaintiff also requests that this Court "retain jurisdiction of this action for the purpose of enabling [it] to apply to the Court, at any time, for such further orders and directions as may be necessary or appropriate for the interpretation or execution of any order entered in this action, for the modification of any such order, for the enforcement or compliance therewith and for the punishment of any violations thereof." (*Id.* at 29-30, ¶ V).

Defendants now move: (i) to dismiss plaintiff's claims against Feldman in the amended complaint in their entirety pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction; and (ii) for partial dismissal of plaintiff's claims against the Defendant Entities in the amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for relief. Specifically, defendants seeks to dismiss all claims against the Defendant Entities in the amended complaint except for Count I (copyright infringement relating to the Work) and Counts VII and VIII (false advertising and misrepresentations under Section 43(a)(1)(B) of the Lanham Act).

III.    Discussion

    A.  Fed. R. Civ. P. 12(b)(2)

        1.  Standard of Review

"A plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." *Troma Entm't, Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 217 (2d Cir. 2013) (quoting *Penguin Grp. (USA) Inc. v. American Buddha*, 609 F.3d 30, 34 (2d Cir. 2010)). "[I]n deciding a pretrial motion to dismiss for lack of personal jurisdiction a district court has considerable procedural leeway. It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quotations and citation omitted). "[H]owever, the showing a plaintiff must make to defeat a defendant's claim that the court lacks personal jurisdiction over it varies depending on the procedural posture of the litigation." *Id.* (quotations and citation omitted).

"Where . . . a district court in adjudicating a motion pursuant to Federal Rule of Civil Procedure 12(b)(2) relies on the pleadings and affidavits, and chooses not to conduct a full-blown evidentiary hearing, plaintiffs need only make a prima facie showing of personal jurisdiction." *Southern New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010); *see also Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015) ("In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists. (quotations and citation omitted)). "This prima facie showing 'must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant.'" *In re Terrorist Attacks on September 11,*

18

*2001*, 714 F.3d 659, 673 (2d Cir. 2013) (quoting *Chloé v. Queen Bee of Beverly Hills, LLC*, 616

F.3d 158, 163 (2d Cir. 2010)); *accord Southern New England Tel.*, 624 F.3d at 138.

"In evaluating whether the requisite showing has been made, [courts] construe the

pleadings and any supporting materials in the light most favorable to the plaintiffs." *Licci ex rel.

Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013); *see also Chloé*, 616

F.3d at 163. Where, as here, personal jurisdiction is challenged by way of a motion pursuant to

Rule 12(b)(2) of the Federal Rules of Civil Procedure, the Court must "assume[] the truth of the

plaintiff's factual allegations," *Dorchester*, 722 F.3d at 85 (quotations and citation omitted);

*accord Troma*, 729 F.3d at 217, and avoid resolving any "dispute[s] over the authenticity of [the

plaintiff's] evidence[.]" *Dorchester*, 722 F.3d at 86. However, courts "will not draw

argumentative inferences in the plaintiff's favor . . . , nor . . . accept as true a legal conclusion

couched as a factual allegation[.]" *Terrorist Attacks*, 714 F.3d at 673 (quotations and citations

omitted).


2. Personal Jurisdiction

"To determine personal jurisdiction over a non-domiciliary in a case involving a federal

question, the Court must engage in a two-step analysis." *Chloe*, 616 F.3d at 163. First, the Court

must apply the forum state's long-arm statute. *Id.* "If the long-arm statute permits personal

jurisdiction, the second step is to analyze whether personal jurisdiction comports with the Due

Process Clause of the United States Constitution." *Id.* at 164.

a. New York's Long-Arm Statute

New York's long-arm statute provides, in relevant part: "As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary. . . who in person or through an agent: 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; . . . or 3. commits a tortious act without the state causing injury to person or property within the state, . . . if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce. . . ." N.Y. C.P.L.R. § 302(a) (emphasis added). "In determining the strength of the contacts under both section 302(a)(1) and the Due Process Clause, [federal courts] look to the totality of Defendants' contacts with the forum state." *Chloe*, 616 F.3d at 164.

The amended complaint alleges, "[u]pon information and belief," that Feldman is a resident of Florida and "is the owner, president, officer, manager, member, operator and/or is directing the business and actions, of the Defendant Entities," (Am. Compl., ¶¶ 5-6, 35), and "alone directs and controls all of the activities of the Defendant Entities." (*Id.*, ¶ 35). The amended complaint is devoid of factual allegations describing any specific conduct on the part of Feldman; rather plaintiff generally refers to the conduct of "defendants" throughout the amended complaint.

"In New York, the individual who owns a corporation is generally not subject to personal jurisdiction as a result of the corporation's activities unless (1) the corporate veil can be 'pierced'

or (2) the corporation acted as an agent for the owner." *Ontel Products, Inc. v. Project Strategies Corp.*, 899 F. Supp. 1144, 1148 (S.D.N.Y. 1995); *see also Kinetic Instruments, Inc. v. Lares*, 802 F. Supp. 976, 984 (S.D.N.Y. 1992) ("[I]t is no longer necessary to 'pierce the corporate veil,' or find that the corporation is the 'alter ego' of the individual officers in order to subject them to jurisdiction on the basis of the corporation's contacts here. *Kreutter* [*v. McFadden Oil Corp.*, 71 N.Y.2d 460, 527 N.Y.S.2d 195, 522 N.E.2d 40 (N.Y. 1988)] and *Retail Software* [*Servs., Inc. v. Lashlee*, 854 F.2d 18 (2d Cir. 1988)] have established that individual corporate officers may be subject to jurisdiction in New York if it is established that the corporation is acting as their agent here.") With respect to the former basis for personal jurisdiction, plaintiff asserts in its Pre-Motion Letter, in pertinent part: "No issue of piercing the corporate veil is presented by the facts. . . . Feldman faces personal liability without piercing the corporate veil."[9] (DE 22 at 2, ¶ E).

Although "a corporate officer who commits or participates in a tort, even if it is in the course of his duties on behalf of the corporation, may be held individually liable[,]" *Bano v. Union Carbide Corp.*, 273 F.3d 120, 133 (2d Cir. 2001) (quotations and citation omitted); *accord Mayfield v. Asta Funding, Inc.*, 95 F. Supp. 3d 685, 701 (S.D.N.Y 2015), plaintiff's conclusory and vague allegations in the amended complaint, which generally refer to "defendants" in the plural and fail to describe Feldman's specific role, if any, in the alleged acts of which plaintiff complains, are insufficient to demonstrate Feldman's personal involvement in any of the alleged misconduct. *See, e.g. Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503, 526 (S.D.N.Y. 2015) (finding that the plaintiff's conclusory allegations that the individual defendants "had personal

---

[9] Similarly, plaintiff asserts in its memorandum of law in opposition to defendants' motion that "Feldman's individual liability is premised on his personal participation in the underlying torts of infringement, false advertising, unfair competition, and the like." (Plf. Opp. at 20, § IX(A)).

involvement with their respective Defendants' corporate business activities and have been involved in the decision making relating to the improper, deceptive, and/or fraudulent activity involved in this case[;]" "controlled the day-to-day operations of the Defendant companies and developed aspects of business activities, such as sales and marketing plans and activities[;]" and "were aware of, or should have been aware of, the improper business practices and should have taken action to prevent the improper practices and changed the company's business practices," were insufficient to establish individual participation (quotations, alterations and citations omitted)); *Merck & Co., Inc. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402, 419-20 (S.D.N.Y. 2006), (finding that the plaintiffs failed to make a prima facie showing that the individual defendant's own contacts with the state satisfied New York's long-arm statute where they failed to allege any specific actions on his part); *Naftali v. New York Deferred Exch. Corp.*, No. 15-cv-7152, 2017 WL 4325725, at * 10 (E.D.N.Y. Aug. 15, 2017), *report and recommendation adopted*, 2017 WL 4286260 (E.D.N.Y. Sept. 26, 2017) (finding that the plaintiffs' allegations, *inter alia*, that the individual defendant is an officer, director, and shareholder of the corporate defendant and uses the corporate defendant "to advance his own business;" and that the corporate defendant has allowed him "to keep total control over the business," and their repeated conclusory references to his participation in the transaction along with the corporate defendant, were insufficient to establish the individual defendant's personal liability). Feldman's "mere knowledge and control of the [Defendant Entities'] operations is insufficient." *Reynolds*, 136 F. Supp. 3d at 527; *see also Peguero v. 601 Fealty Corp.*, 58 A.D.3d 556, 559, 873 N.Y.S.2d 17 (N.Y. App. Div. 2009) (holding that personal liability may be imposed on a corporate officer only "for misfeasance or malfeasance, i.e., an affirmative tortious

act; personal liability cannot be imposed on a corporate officer for nonfeasance, i.e., a failure to act.")

Contrary to plaintiff's contention, the Court is not required to assume the truth of its conclusory allegations that Feldman "did personally participate in the torts," (Plf. Opp. at 20-21), and "transacted business in New York," (*id.* at 21), since the amended complaint is bereft of any facts tending to support those allegations. *See Mirman v. Feiner*, 900 F. Supp. 2d 305, 309 (E.D.N.Y. 2012) (holding that on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2), "the Court is not bound by conclusory statements, without supporting facts."); *Weiss v. Barc, Inc.*, No. 12-cv-7571, 2013 WL 2355509, at * 1 (S.D.N.Y. May 29, 2013) ("While the court presumes the truth of plaintiff's allegations for the purposes of the [Rule 12(b)(2)] motion to dismiss, mere conclusory allegations are insufficient to support a prima facie showing of personal jurisdiction." (quotations and citation omitted)); *Orlofsky v. Devlin Grp., Inc.*, No. 08-cv-3635, 2010 WL 11623064, at *2 (E.D.N.Y. Jan. 27, 2010) ("When considering a 12(b)(2) motion to dismiss, the Court assumes as true factual averments of jurisdiction. . . . However, conclusory non-fact-specific jurisdictional allegations or a legal conclusion couched as a factual allegation will not establish a prima facie showing of jurisdiction." (quotations and citations omitted)). Indeed, plaintiff's memorandum of law in opposition to defendants' motion makes it clear that its claims in the amended complaint are based upon the acts of the Defendant Entities, to which plaintiff refers in its memorandum of law as the "Corporate Defendants," not upon any individual acts of Feldman. Specifically, plaintiff contends that any attack on the personal jurisdiction of the Corporate Defendants "would be futile, as [they] operate 'active' websites from which residents of New York can purchase (and have purchased) the infringing goods and upon which the

infringing instructions and the false advertisements appear. *If Feldman participated in these torts*, then for the same reasons there is jurisdiction over the Corporate Defendants, there is jurisdiction over Feldman." (Plf. Opp. at 21) (emphasis added).

Each of the cases cited by plaintiff in support of its contention that the amended complaint sufficiently asserts claims of Feldman's individual liability is inapposite because the plaintiffs in those cases presented sufficient facts from which the individual defendants' actual participation in the alleged wrongful acts could reasonably be inferred. *See Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 606 (3d Cir. 1978) (finding that facts demonstrating that the individual defendant's duties as president of the corporate defendant included "arrangements of marketing services" and "the distribution of the banks," and that he authorized and approved the acts of unfair competition which formed the basis of the corporate defendant's liability by, *inter alia*, giving the designer background material for use in designing the Casper Collector's Society Brochure and certificate of authenticity, knowing that the plaintiff "was the only manufacturer of penny banks using such a certificate of authenticity in connection with its products," sufficiently alleged his "actual participation in the wrongful acts" to make him individually liable); *National Survival Game, Inc. v. Skirmish, U.S.A., Inc.*, 603 F. Supp. 339, 340-41 (S.D.N.Y. 1985) (denying the defendants' motion to dismiss under the pre-*Twombly* standard of review where the complaint alleged that each of the individual defendants, who were officers of the corporate defendants, "personally participated in the wrongful acts and, as such, may be held jointly and severally liable with the defendant corporations," by, *inter alia*, attending meetings with the plaintiff's principal seeking to negotiate a dealership); *Polyglycoat Corp. v. C.P.C. Distribs., Inc.*, 534 F. Supp. 200, 204 (S.D.N.Y. 1982) (finding that the tort claims against the president of

the corporate defendant were sustainable in light of allegations that he "actually participated in the scheme and knowingly and personally made false representations.") To the contrary, the amended complaint in this case does not specifically allege Feldman's personal participation in any of the alleged wrongful conduct; it contains only conclusory allegations regarding Feldman's knowledge and control of the company, which is insufficient to establish his personal liability. *See, e.g. Reynolds*, 136 F. Supp. 3d at 526-27 ("In cases where courts have found individual defendants to have participated in the misrepresentations at issue, the complaints specifically alleged personal participation, rather than mere awareness or control. . . . [T]he Individual Defendants' mere knowledge and control of the company's operations is insufficient.")

With respect to the agency basis for personal jurisdiction, there appears to be no dispute that the Defendant Entities' activities within the state are sufficient to obtain personal jurisdiction over them under New York's long-arm statute. Thus, the issue is whether plaintiff has made a prima facie showing that the Defendant Entities served as the agent of Feldman with respect to the transactions alleged in the amended complaint for jurisdictional purposes.

"In order to establish personal jurisdiction over an out-of-state corporate officer based on the corporation's activities within the state, a plaintiff must show that the officer is a 'primary actor[ ] in the [corporation's] transaction in New York' and not merely 'some corporate employee.'"[10] *Gibson-Hawley v. USA Mgmt. LLC*, No. 17-cv-4346, 2018 WL 4691576, at *4

---

[10] The agency analysis is the same under both Section 302(a)(1) and Section 302(a)(3) of the New York Civil Practice Law and Rules. *See generally Kinetic Instruments*, 802 F. Supp. at 984 ("*Kreutter* and *Retail Software* both involved § 302(a)(1), the part of the New York long-arm statute which subjects a defendant to jurisdiction for a cause of action related to his transaction of business in the state. . . . However, *Kreutter* made clear that its holding applied to the entire long-arm statute . . . and we see no reason why a corporation may not serve as an agent for corporate officers under the other provisions of the statute."); *e.g. Giuliano v. Barch*, No. 16-cv-0859, 2017

(E.D.N.Y. Sept. 14, 2018), *report and recommendation adopted*, 2018 WL 4689000 (E.D.N.Y. Sept. 28, 2018) (brackets in original) (quoting *Retail Software*, 854 F.2d at 22); *see also In re Lyman Good Dietary Supplements Litig.*, No. 17-cv-8047, 2018 WL 3733949, at *8 (S.D.N.Y. Aug. 6, 2018) ("At the heart of th[e] [personal jurisdiction] inquiry is whether the out-of-state corporate officers were primary actors in the transaction in New York that gave rise to the litigation, and not merely some corporate employees [] who played no part in it." (quotations, alterations and citations omitted)). Thus, the plaintiff must "rely on facts establishing that the corporate officer was the driving force behind the New York transactions[,] . . . [and] [t]he facts must indicate personal involvement on behalf of the corporate officer in the activities giving rise to the suit." *Rainbow Apparel Distribution Ctr. Corp. v. Gaze U.S.A., Inc.*, 295 F.R.D. 18, 26 (E.D.N.Y. 2013) (citations omitted).

"Even where the corporate officer was principally involved in the transaction that gave rise to Plaintiff's claim, courts have held that personal jurisdiction cannot be established absent an allegation that the company's activity was performed for the corporate officer's benefit and with his knowledge and consent." *Gibson-Hawley*, 2018 WL 4691576, at *4 (quotations omitted); *see also Rainbow Apparel*, 295 F.R.D. at 25 ("To establish agency, defendant's agent must have transacted business in New York for the benefit of and with the knowledge and consent of the defendant and the defendant must have exercised some control over the agent in

---

WL 1234042, at * 12 (S.D.N.Y. Mar. 31, 2017) ("[I]n cases involving corporate officers, personal jurisdiction over the corporation for a tortious act does not necessarily grant jurisdiction over its employees; in order to show jurisdiction over an out-of-state officer for a corporation's actions, a plaintiff must show that the officer is a primary actor in the transaction in New York and not merely some corporate employee [] who played no part in the allegedly tortious act." (quotations, alterations and citation omitted)).

the matter." (quotations, alterations and citation omitted)); *In re Lyman*, 2018 WL 3733949, at *8 ("[A] corporate officer is subject to personal jurisdiction only if it can be shown that the corporation transacted business in New York as the officer's agent. . . . To satisfy this standard, the plaintiff must allege that the corporation engaged in 'purposeful activities' in New York for the benefit of and with the knowledge and consent of the corporate officer and that the officer exercised some control over the corporation with respect to those activities." (quotations and citations omitted)); *Kinetic Instruments*, 802 F. Supp. at 984 ("[A] corporation is not necessarily the agent of a corporate officer simply by virtue of the officer's position with the company. As both *Kreutter* and *Retail Software* emphasized, the transaction at issue performed by the corporation here must be with the knowledge and consent of the officer and the officer must have exercised control over the corporation in the transaction.") Thus, in order "for a corporation to be considered an agent of an officer for personal jurisdiction purposes, a plaintiff must allege: (1) that the corporation engaged in purposeful activities in New York in relation to the transaction; (2) that the corporation's activities were performed for the benefit of the individual defendant; (3) that the corporation's activities were performed with the knowledge and consent of the individual defendant; and (4) that the individual defendant exercised some control over the corporation." *Beatie & Osborn LLP v. Patriot Sci. Corp.*, 431 F. Supp. 2d 367, 389 (S.D.N.Y. 2006).

Plaintiff's conclusory allegations in the complaint are insufficient to make a prima facie showing that Feldman was a primary actor in the specific transactions giving rise to plaintiff's claims in the amended complaint. *See, e.g. Karabu Corp. v. Gitner*, 16 F. Supp.2d 319, 324 (S.D.N.Y. 1998) (holding that in order to make a prima facie showing of personal jurisdiction, "a

plaintiff's allegations must sufficiently detail the defendant's conduct so as to persuade a court that the defendant was a 'primary actor' in the specific matter in question; control cannot be shown based merely upon a defendant's title or position within the corporation, or upon conclusory allegations that the defendant controls the corporation."); *In re Lyman*, 2018 WL 3733949, at * 8-9 (finding that allegations asserting only that the individual defendants had general authority over their corporation and conclusory allegations regarding the defendants' personal involvement in the transactions at issue were insufficient to assert personal jurisdiction); *Levin v. American Document Servs., LLC*, No. 17-cv-1295, 2018 WL 1358815, at * 3 (E.D.N.Y. Mar. 16, 2018) ("[C]onclusory allegations that the corporate officers exercised control over the corporation by virtue of their title or position within the corporation [] do not suffice." (quotations, alterations and citation omitted)). By grouping Feldman's activities in with the alleged conduct of the Defendant Entities, plaintiff "provides no basis for the Court to determine whether [Feldman] was a 'primary actor' orchestrating the allegedly tortious conduct, or whether he was named in the complaint simply because his name appears at the top of [the Defendant Entities'] masthead." *Merck*, 425 F. Supp. 2d at 420 (quotations, alterations and citation omitted).

Moreover, courts routinely grant 12(b)(2) motions for lack of personal jurisdiction where, as here, "the plaintiff made only broadly worded and vague allegations about a defendant's participation in the specific matter at hand." *Karabu Corp.*, 16 F. Supp. 2d at 324 (citing cases); *accord Gerstle v. Nat'l Credit Adjusters, LLC*, 76 F. Supp. 3d 503, 510 (S.D.N.Y. 2015). Since plaintiff has not made a prima facie showing that Feldman's own conduct or contacts with the state satisfy New York's long-arm statute, or that the Court's jurisdiction over

the Defendant Entities should be imputed to him under an agency theory, personal jurisdiction is not authorized by the New York long-arm statute.[11] S*ee Merck*, 425 F. Supp. 2d at 419. Accordingly, the branch of defendants' motion seeking dismissal of plaintiff's claims against Feldman pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure is granted and plaintiff's claims against Feldman are dismissed in their entirety for lack of personal jurisdiction.

B.  Fed. R. Civ. P. 12(b)(6)

1.  Standard of Review

The standard of review on a motion made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is that a plaintiff plead sufficient facts "to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (brackets in original) (quoting Fed. R. Civ. P. 8(a)(2)). "Determining whether a complaint states a plausible claim for relief will[] . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

---

[11] Since exercising personal jurisdiction is not authorized by the New York long-arm statute, it is unnecessary to consider whether exercising jurisdiction would comport with the Due Process Clause. *See Licci*, 673 F.3d at 75.

"A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937 (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. 1955). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. 544, 127 S. Ct. at 1959.

In deciding a motion pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Kim v. Kimm*, 884 F.3d 98, 102-03 (2d Cir. 2018); *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017). However, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679, 129 S. Ct. 1937. "In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.*; *see also Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 317, n. 1 (2d Cir. 2010).

Moreover, "[a] litigant cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory. Those magic words will only make otherwise unsupported claims plausible when 'the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the

inference of culpability plausible.'" *Citizens United v. Schneiderman*, 882 F.3d 374, 384-85 (2d

Cir. 2018) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)); *see also*

*Lankau v. Luxoft Holding, Inc.*, 266 F. Supp. 3d 666, 673 (S.D.N.Y. 2017) ("While a plaintiff

may plead facts alleged upon information and belief where the belief is based on factual

information that makes the inference of culpability plausible, such allegations must be

accompanied by a statement of the facts upon which the belief is founded. . . . The pleadings . . .

must contain something more than [] a statement of facts that merely creates a suspicion of a

legally cognizable right of action." (quotations, alterations and citations omitted)); *Securities &*

*Exch. Comm'n v. Thompson*, 238 F. Supp. 3d 575, 587-88 (S.D.N.Y. 2017) ("A plaintiff may

plead facts alleged upon information and belief where the facts are peculiarly within the

possession and control of the defendant[,] . . . [b]ut, if the Court can infer no more than the mere

possibility of misconduct from the factual averments– in other words, if the well-pled allegations

of the complaint have not nudged plaintiff's claims across the line from conceivable to

plausible– dismissal is appropriate." (quotations, alterations and citations omitted)).

 Nonetheless, a plaintiff is not required to plead "specific evidence or extra facts beyond

what is needed to make the claim plausible." *Arista Records*, 604 F.3d at 120-1; *accord Pension*

*Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv.*

*Mgmt. Inc.*, 712 F.3d 705, 729-30 (2d Cir. 2013). "When there are well-pleaded factual

allegations, a court should assume their veracity and then determine whether they plausibly give

rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679, 129 S. Ct. 1937.

 In deciding a motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure,

the Court must limit itself to the facts alleged in the complaint, which are accepted as true; to any

documents attached to the complaint as exhibits or incorporated by reference therein; to matters of which judicial notice may be taken; or to documents upon the terms and effect of which the complaint "relies heavily" and which are, thus, rendered "integral" to the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002); *see also Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230-31 (2d Cir. 2016).

### 2.    Copyright Claims

a.   "Placeholder" Copyright Claim (Count II of the Amended Complaint)

The Copyright Act provides, in pertinent part, that with exceptions not relevant here, "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." 17 U.S.C. § 411(a). Accordingly, Section 411(a) of the Copyright Act requires "copyright registration as a precondition to instituting an infringement action." *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 125 (2d Cir. 2014); *see also Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 166, 130 S. Ct. 1237, 176 L. Ed. 2d 18 (2010) (holding that Section 411(a) imposes a non-jurisdictional precondition to filing a claim); *Gattoni v. Tibi, LLC*, 254 F. Supp. 3d 659, 663 (S.D.N.Y. 2017) ("[D]istrict courts in the Second Circuit require that a plaintiff either hold a valid copyright registration or have applied and been refused a registration as a prerequisite to filing a civil claim." (quotations and citation omitted)); *Sara Designs, Inc. v. A Classic Time Watch Co. Inc.*, 234 F. Supp. 3d 548, 554 (S.D.N.Y. 2017) ("Proper registration is a prerequisite to an action for [copyright] infringement.") Since plaintiff has not alleged that it filed the applications for registration of the "Other Works" which form the basis of its copyright

infringement action in Count II of the amended complaint as required by the plain terms of the Copyright Act, it failed to satisfy the preconditions to suit under § 411(a) with respect to those claims.[12] *See, e.g. Psihoyos*, 748 F.3d at 125; *Palmer/Kane LLC v. Rosen Book Works LLC*, 204 F. Supp. 3d 565, 574 (S.D.N.Y. 2016) (dismissing the plaintiff's copyright infringement claims arising from the defendant's use of images that were not validly registered "because proper registration is a precondition to bringing an action for copyright infringement.")

Moreover, in order to state a claim for copyright infringement "a plaintiff must generally plead (1) the specific original works [which] are the subject of the copyright claim; (2) that plaintiff owns the copyrights in those works; (3) that the copyrights were registered in accordance with 17 U.S.C. § 411; and (4) the acts by which and the time period during which the defendant infringed the copyright." *DigitAlb, SH.A v. Setplex, LLC*, 284 F. Supp. 3d 547, 554 (S.D.N.Y. 2018); *accord Energy Intelligence Grp., Inc. v. Jeffries, LLC*, 101 F. Supp. 3d 332, 338 (S.D.N.Y. 2015). Since, *inter alia*, plaintiff does not identify the specific works allegedly infringed by defendants in Count II of the amended complaint, it fails to state a plausible claim of copyright infringement with respect to those unspecified "Other Works." Accordingly, the branch of defendants' motion seeking dismissal of Count II of the amended complaint pursuant

---

[12] Indeed, plaintiff essentially concedes that it has not filed applications for registration of any other work except the instruction sheet underlying Count I of the amended complaint, *i.e.*, the Work, by indicating, *inter alia*, that it "suspects that Defendants copied additional instruction sheets and other written materials, but only Defendants know the full extent of the copying. Thus, rather than applying for registrations and special handling dozens of Wolo's copyrightable works, potentially costing tens of thousands of dollars, Wolo included Count II as a 'place holder,' to put the Court and Defendants on notice that [it] intends to file for additional copyright registrations and amend its Complaint to assert additional claims of copyright infringement once [it] receives information from Defendants by way of discovery." (Plf. Opp. at 4). Notably, plaintiff does not proffer any facts upon which it bases its purportedly good faith belief "that Defendants copied other of [its] instructions." (Pre-Motion Letter at 1).

to Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted and Count II of the amended complaint is dismissed in its entirety for failure to state a claim for relief.

### b. Claim for Statutory Damages under 17 U.S.C. § 504(c)

Section 412 of title 17 of the United States Code provides, in relevant part, that with exceptions not relevant here:

> "In any action under this title . . . no award of statutory damages or of attorney's fees, as provided by sections 504 and 505, shall be made for . . . any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work."

17 U.S.C. § 412. Since it is undisputed that defendants' allegedly infringing use of the Work occurred after the first publication of the Work on December 31, 2008, but before registration of the copyright on August 21, 2017, and registration was not made within three (3) months after the first publication of the work, plaintiff is precluded from recovering statutory damages under 17 U.S.C. § 504(c) for its remaining copyright infringement claim (Count I of the amended complaint). *See, e.g. On Davis v. The Gap, Inc.*, 246 F.3d 152, 158 n. 1 (2d Cir. 2001); *Medisim Ltd. v. BestMed LLC*, 910 F. Supp. 2d 591, 619-20 (S.D.N.Y. 2012); *CA Inc. v. Rocket Software, Inc.*, 579 F. Supp. 2d 355, 364 (E.D.N.Y. 2008). Accordingly, the branch of defendants' motion seeking dismissal of plaintiff's claim for statutory damages under 17 U.S.C. § 504(c) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted and plaintiff's claim for statutory damages under 17 U.S.C. § 504(c) is dismissed in its entirety with prejudice as precluded by 17 U.S.C. § 412.

3.  Claims under Section 43(a)(1)(A) of the Lanham Act

Section 43(a)(1) of the Lanham Act provides, in pertinent part:

> "Any person who, on or in connection with any goods . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which– (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person. . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act. "

15 U.S.C. § 1125(a)(1).

"The principal purpose of federal trademark law is to secure the public's interest in protection against deceit as to the sources of its purchases, and the businessman's right to enjoy business earned through investment in the good will and reputation attached to a trade name." *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*, 696 F.3d 206, 215 (2d Cir. 2012) (quotations, alterations and citation omitted); *see also Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114, 119 (2d Cir. 2001) ("When evaluating [trade dress] claims, courts must not lose sight of the underlying purpose of the Lanham Act, which is protecting consumers and manufacturers from deceptive representations of affiliation and origin." (quotations and citation omitted)). "Nevertheless, trademark law is not intended to protect innovation by giving the innovator a monopoly over a useful product feature." *Christian Louboutin*, 696 F.3d at 215 (quotations, alterations and citation omitted); *see also Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 33 (2d Cir. 1995) (holding that the purpose of trade dress law is "to protect an owner of a dress in informing the public of the source of its products, without permitting the owner to exclude competition from functionally similar

35

products.") "Trade dress protection must subsist with the recognition that in many instances there is no prohibition against copying goods and products. In general, unless an intellectual property right such as a patent or copyright protects an item, it will be subject to copying." *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 121 S. Ct. 1255, 1260, 149 L. Ed. 2d 164 (2001)); *see also Best Cellars, Inc. v. Wine Made Simple, Inc.*, 320 F. Supp 2d 60, 69 (S.D.N.Y. 2003) ("The text of the statute makes clear that the Lanham Act is not intended to enable monopolistic use of a commercial idea, but rather aims to guard against confusion in the marketplace that would harm both buyers and sellers.")

The amended complaint describes plaintiff's purported trademark as "the carbon fiber look mark-- the ornamental appearance of carbon fiber style graphics applied in an arbitrary fashion to a portion of a Wolo-product," (Am. Compl., ¶ 29); identifies "[o]ne such product that uses the Mark," *i.e.*, the Wolo Bandido Power Air Horn, (*id.*, ¶ 30); and includes an image of "the Bandido Horn utilizing the Mark" as an exhibit. (*Id.*, Ex. 2).

"A product's trade dress encompasses the overall design and appearance that make the product identifiable to consumers." *Nora Beverages*, 269 F.3d at 118. "Trade dress originally included only the packaging, or 'dressing,' of a product, but it has been expanded to encompass . . . the design or configuration of the product itself." *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 114 (2d Cir. 2001) (quotations and citations omitted); *see also L. & J.G. Stickley, Inc. v. Canal Dover Furniture Co., Inc.*, 79 F.3d 258, 262 (2d Cir. 1996) ("Although trade dress once referred only to the manner in which a product was 'dressed up' to go to market with a label, package, display card, and similar packaging elements, the concept now includes the design and appearance of the product as well as that of the container. . . . It is essentially the total image and

overall appearance of a product." (quotations, brackets and citations omitted)).

To state a claim for trade dress infringement involving product design, the plaintiff must allege: "(1) that the mark is distinctive as to the source of the good, [] (2) that there is a likelihood of confusion between its good and the defendant's [product][,]" *Yurman Design*, 262 F.3d at 115; *accord Forschner Grp., Inc. v. Arrow Trading Co., Inc.*, 124 F.3d 402, 407 (2d Cir. 1997), and (3) that the "unregistered trade dress is 'not functional.'" *Yurman Design*, 262 F.3d at 116; *see also TrafFix Devices*, 532 U.S. at 29, 121 S. Ct. 1255 ("[T]rade dress protection may not be claimed for product features that are functional."); *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769, 112 S. Ct. 2753, 120 L. Ed. 2d 615 (1992) ("[E]ligibility for protection under § 43(a) [of the Lanham Act] depends on nonfunctionality.") "A plaintiff must also offer 'a precise expression of the character and scope of the claimed trade dress[,]'" *Sherwood 48 Assocs. v. Sony Corp. of Am.*, 76 F. App'x 389, 391 (2d Cir. Sept. 29, 2003) (summary order) (quoting *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. 1997)), "and articulate the elements of their product design with specificity to be afforded trade dress protection." *Bubble Genius LLC v. Smith*, 239 F. Supp. 3d 586, 593 (E.D.N.Y. 2017) (quotations and citation omitted); *see also Wine Enthusiast, Inc. v. Vinotemp Int'l Corp.*, 317 F. Supp. 3d 795, 803 (S.D.N.Y. 2018); *Sara Designs*, 234 F. Supp. 3d at 555 (holding that the complaint must articulate "which of the plaintiff's trade design elements are distinctive and how they are distinctive."); *Tracey Tooker & TT Ltd., Inc. v. Whitworth*, 212 F. Supp. 3d 429, 434 (S.D.N.Y. 2016) (holding that the plaintiff must specify in the complaint "both which features are distinctive and how they are distinctive." (emphasis, quotations and citation omitted)); *R.F.M.A.S., Inc. v. Mimi So*, 619 F. Supp. 2d 39, 77 (S.D.N.Y. 2009) ("[A] plaintiff must provide

a sufficiently specific articulation of the common distinctive elements of the product line's trade dress rather than sweeping, overly general descriptions that essentially corner the market on an idea. Merely pointing to pictures of a product line will not suffice.")

Similarly, in order to state either an unfair competition claim or a false designation of origin claim under Section 43(a) of the Lanham Act, the plaintiff must allege (1) that it has a valid mark entitled to protection under the Act, and (2) that the defendant's actions are likely to cause confusion. *See LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, 649 (S.D.N.Y. 2016), *aff'd*, 720 F. App'x 24 (2d Cir. Dec. 20, 2017) (false designation of origin and unfair competition claims); *Bubble Genius*, 239 F. Supp. 3d at 601 (unfair competition claim); *Genometrica Research Inc. v. Gorbovitski*, No. 11-cv-5802, 2013 WL 394892, at * 13 (E.D.N.Y. Jan. 31, 2013) (false designation of origin claim); *Toy Mfrs. of Am., Inc. v. Helmsley-Spear, Inc.*, 960 F. Supp. 673, 678 (S.D.N.Y. 1997) (false designation of origin claim).

### a. Protectable Trade Dress

Although the amended complaint articulates which element of plaintiff's purported "Mark," or trade dress, is purportedly distinctive, *i.e.*, "the ornamental appearance of carbon fiber style graphics applied in an arbitrary fashion to a portion of a Wolo-product,"[13] (Am. Compl., ¶ 29), it does not articulate how or why that element is distinctive or source-indicating. *See Sara Designs*, 234 F. Supp. 3d at 555 (holding that a plaintiff must articulate which of its

---

[13] In its memorandum of law in opposition to defendants' motion, plaintiff further indicates, *inter alia,* that "[t]he asserted trade dress is the ornamental surface decoration in the form of a carbon fiber look. The carbon fiber look is not a result of the product's material, but is separately applied at additional cost to Wolo. The applied look could take any form or color or combination of colors." (Plf. Opp. at 10).

trade dress elements are distinctive and how they are distinctive in order to plead a claim of trade dress infringement involving the appearance of a product); *Carson Optical, Inc. v. Prym Consumer USA, Inc.*, 11 F. Supp. 3d 317, 347 (E.D.N.Y. 2014) ("[I]t is insufficient to merely provide a laundry list of the elements that constitute a [] design. . . . Rather the plaintiff must provide a description of which of plaintiff's trade dress design elements are distinctive and how they are distinctive." (quotations, alterations and citations omitted)). Rather, plaintiff merely identifies one (1) feature utilized on one (1) of its products, *i.e.*, the Bandido Horn, in order to "essentially corner the market" on the idea of using "carbon fiber style graphics" on automotive accessories. *R.F.M.A.S.*, 619 F. Supp. 2d at 77. Federal trademark law does not protect such an idea, concept or "generalized type of appearance." *Yurman*, 262 F.3d at 115; *accord International Leisure Prods., Inc. v. Funboy LLC*, --- F. App'x ---, 2018 WL 4224335, at * 2 (2d Cir. Sept. 6, 2018) (summary order).

Furthermore, based upon the allegations in the amended complaint, the use of "carbon fiber style graphics applied in an arbitrary fashion" on the horn is intended to render the product more appealing, rather than to identify the product's source. "Source identification, though, is the key consideration for trademark law's twin goals of protecting consumers from confusion and protecting manufacturers from unfair competition." *Funboy*, --- F. Appx ---, 2018 WL 4224335, at *3 (citing *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 211-13, 120 S. Ct. 1339, 146 L. Ed. 2d 182 (2000)); *see also Nora Beverages*, 164 F.3d at 743 ("The focus of the distinctiveness inquiry, and the ultimate test of protectability under the Lanham Act, is whether the plaintiff's trade dress is capable of distinguishing the plaintiff's goods from those of others.") Accordingly, the amended complaint fails to state a plausible claim for trademark or trade dress

infringement under Section 43(a)(1)(A) of the Lanham Act. *See, e.g. Funboy*, --- F. App'x ---, 2018 WL 4224335, at * 3); *Carson Optical*, 11 F. Supp. 3d at 347.

Moreover, "in an action for infringement of unregistered trade dress under § 43(a) of the Lanham Act, a product's design is distinctive, and therefore protectible, only upon a showing of secondary meaning."[14] *Samara Bros., Inc.*, 529 U.S. at 216, 120 S. Ct. 1339. "A mark has acquired 'secondary meaning' when, 'in the minds of the public, the primary significance of a product feature [] is to identify the source of the product rather than the product itself.'" *Christian Louboutin*, 696 F.3d at 216 (alterations omitted) (quoting *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851 n. 11, 102 S. Ct. 2182, 72 L. Ed. 2d 606 (1982)).

The complaint is devoid of any factual allegations from which a finding of secondary meaning may reasonably be inferred. "Factors that are relevant in determining secondary meaning include (1) advertising expenditures, (2) consumer studies linking the mark to a source, (3) unsolicited media coverage of the product, (4) sales success, (5) attempts to plagiarize the mark, and[] (6) length and exclusivity of the mark's use." *Christian Louboutin*, 696 F.3d at 226 (quotations and citation omitted). Plaintiff pleads no factual allegations in support of any of those

---

[14] "Where the mark is a word, symbol or even product packaging, the plaintiff may prove distinctiveness by showing either that the 'intrinsic nature' of the mark serves to identify a particular source (what is known as 'inherent distinctiveness') or that in the minds of the public, the primary significance of the mark is to identify the source of the product rather than the product itself (what is known as 'acquired distinctiveness' or 'secondary meaning')." *Yurman Design*, 262 F.3d at 115 (quotations, emphasis, alterations and citation omitted). Contrary to plaintiff's contention, the Mark clearly is not inherently distinctive, *i.e.*, nothing in the nature thereof serves to identify a particular source, particularly given plaintiff's representation that "[t]he applied look [of the Mark] could take any form or color or combination of colors." (Plf. Opp. at 10). Accordingly, regardless of whether plaintiff's Section 43(a)(1)(A) infringement claim is construed as relating to product design or to product packaging, plaintiff must allege sufficient factual allegations from which a finding of secondary meaning may reasonably be inferred in order to state a plausible claim for relief.

factors in the amended complaint. Plaintiff's conclusory allegations, (*see, e.g.* Am. Compl., ¶¶ 31-33, 84-86 and 90-91), are insufficient to state a plausible claim for relief. *See, e.g. Urban Grp. Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc.*, No. 12-cv-3599, 2012 WL 3240442, at * 6-7 (S.D.N.Y. Aug. 7, 2012); *Bubble Genius*, 239 F. Supp. 3d at 600-01; *Sara Designs*, 234 F. Supp. 3d at 555-56; *Carson Optical*, 11 F. Supp. 3d at 343-44.

Since plaintiff has not plausibly alleged that it has a protectable trade dress, the amended complaint also fails to state a plausible claim for either unfair competition or false designation of origin under Section 43(a) of the Lanham Act. *See, e.g. Bubble Genius*, 239 F. Supp. 3d at 601 (finding that the plaintiff failed to state a plausible unfair competition claim based on trade dress infringement because it failed to adequately plead that its trade dress was entitled to protection); *AJB Enters., LLC v. Backjoy Orthotics, LLC*, No. 3:16-cv-758, 2016 WL 7341702, at * 7-8 (D. Conn. Dec. 18, 2016) ("Without a valid trademark entitled to protection under the Lanham Act, whether in the form of an unregistered trademark, valid trade dress or other source of recognized protection, [the plaintiff] fails to state a claim for unfair competition based on the copying of its descriptive trademark and design features"); *Genometrica Research*, 2013 WL 394892, at * 14 (dismissing the plaintiff's false designation of origin claims because it failed to allege that it had a mark, trade dress or trade name that was "valid and eligible for protection.") Accordingly, the branch of defendants' motion seeking dismissal of plaintiff's claims under Section 43(a)(1)(A) of the Lanham Act pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted and plaintiff's claims under Section 43(a)(1)(A) of the Lanham Act (Count III of the amended complaint) are dismissed in their entirety with prejudice for failure to state a claim for relief.[15]

---

[15] In light of this determination, it is unnecessary to consider defendants' remaining contentions

4. State Law Dilution, Trademark Infringement and Unfair Competition Claims

A dilution claim under N.Y. Gen. Bus. Law § 360–*l*, requires the plaintiff to show: "(1) that the trademark is truly distinctive or has acquired secondary meaning, and (2) a likelihood of dilution either as a result of 'blurring' or 'tarnishment.'" *Bubble Genius*, 239 F. Supp. 3d at 693 (quoting *Eyal R.D. Corp. v. Jewelex N.Y. Ltd.*, 784 F. Supp 441, 449 (S.D.N.Y. 2011)); *see also Sara Designs*, 234 F. Supp. 3d at 556 ("To prevail on a trademark dilution claim brought under § 360–[*l*], a plaintiff must show (1) that it possesses a strong mark, one which has a distinctive quality or has acquired a secondary meaning such that the trade name has become so associated in the public's mind with the plaintiff that it identifies goods sold by that entity as distinguished from goods sold by others, and (2) a likelihood of dilution by either blurring or tarnishment." (quotations and citation omitted)).

To prevail on a trademark infringement claim under New York common law, the plaintiff must demonstrate "that its mark is a protectible trademark and that defendants' use of the mark is likely to confuse consumers as to the source or sponsorship of plaintiff's product." *Sara Designs*, 234 F. Supp. 3d at 556 (quotations and citation omitted); *see also Wolstenholme v. Hirst*, 271 F. Supp. 3d 625, 643 (S.D.N.Y. 2017) ("To plead a claim for trade dress infringement under New York common law, a plaintiff must prove (1) that its trade dress is distinctive or has acquired secondary meaning; and (2) that a likelihood of confusion exists between its product and the defendant's product." (quotations and citation omitted)); *Lorillard Tobacco Co. v. Jamelis Grocery, Inc.*, 378 F. Supp. 2d 448, 456 (S.D.N.Y. 2005) ("[T]he elements necessary to prevail on [a] cause[] of action for trademark infringement . . . under New York common law mirror[s]

seeking dismissal of plaintiff's claims under Section 43(a)(1)(A) of the Lanham Act.

the Lanham Act claims." (quotations and citation omitted)). Similarly, to plead a viable cause of action under N.Y. Gen. Bus. Law § 133, the plaintiff must show that defendant (1) used the mark and (2) "acted in bad faith to deceive the public." *L&L Wings, Inc. v. Marco-Destin, Inc.*, 676 F. Supp. 2d 179, 190 (S.D.N.Y. 2009); *see generally Staten Island Bd. of Realtors, Inc. v. Smith*, 298 A.D.2d 592, 594, 749 N.Y.S.2d 267 (N.Y. App. Div. 2002) (holding that a claim under N.Y. Gen. Bus. Law § 133 requires a showing that the mark has acquired secondary meaning); *but see Commerce Foods, Inc. v. PLC Commerce Corp.*, 504 F. Supp. 190, 193 (S.D.N.Y. 1980) ("Under New York law, . . . an injunction may issue against confusingly similar trade dress, even if no secondary meaning is shown. . . To warrant protection the first comer's design need merely be distinctive enough to become recognized as a public guaranty of origin and quality." (quotations and citations omitted)).

"The elements of a federal trademark-infringement claim and a New York unfair competition claim are almost indistinguishable, except that New York requires an additional element of bad faith and proof of actual confusion if money damages are sought." *TufAmerica, Inc. v. Codigo Music LLC*, 162 F. Supp. 3d 295, 331 (S.D.N.Y. 2016) (quotations and citation omitted); *see also Coty Inc. v. Excell Brands, LLC*, 277 F. Supp. 3d 425, 440 (S.D.N.Y. 2017) ("Courts use the same standards [applicable to claims under Section 43(a) of the Lanham Act] to evaluate unfair competition claims under New York law, except that a plaintiff must prove 'bad faith' in order to prevail under New York common law."); *Advance Magazine Publishers, Inc. v. Norris*, 627 F. Supp. 2d 103, 112 (S.D.N.Y. 2008) ("The elements of Defendants' common law claims for trademark infringement and unfair competition are similar to their federal claims, . . . except that New York unfair competition law also requires a showing of actual confusion and

bad faith before monetary relief maybe awarded[.]" (quotations and citations omitted)).

Since, for the reasons set forth above, the amended complaint fails to state a plausible claim for relief under Section 43(a)(1)(A) of the Lanham Act, it also fails to state plausible claims under N.Y. Gen. Bus. Law §§ 133 and 360−*l*, *see, e.g. Bubble Genius*, 239 F. Supp. 3d at 604 (dismissing the plaintiff's state law dilution claim for failure to state a claim where the plaintiff had not pled sufficient facts that would lead to an inference that its trade dress had acquired secondary meaning or was otherwise protectable); *Schutte Bagclosures Inc. v. Kwik Lok Corp.*, 193 F. Supp. 3d 245, 284 (S.D.N.Y. 2016), *aff'd*, 699 F. App'x 93 (2d Cir. Nov. 2, 2017) (dismissing a state law trade dress dilution claim because the party could not show that it owned a protectable trade dress); *Maharishi Hardy Blechman Ltd. v. Abercrombie & Fitch Co.*, 292 F. Supp. 2d 535, 552 (S.D.N.Y. 2003) (dismissing the plaintiff's claims of dilution under federal and state law because the court had determined that there was "no protectable trade dress to be diluted in the first place"); *Gluco Perfect, LLC v. Perfect Gluco Products, Inc.*, No. 14-cv-1678, 2014 WL 4966102, at * 19 (E.D.N.Y. Oct. 3, 2014) ("Federal courts apply the Lanham Act's unfair competition standard to analyze Section 133 claims"); or for trademark infringement, or unfair competition based upon defendants' allegedly unauthorized use or misappropriation of the Mark, under New York common law. *See, e.g. Sara Designs*, 234 F. Supp. 3d at 556; *Van Praagh v. Gratton*, 993 F. Supp. 2d 293, 301 (E.D.N.Y. 2014). Accordingly, the branches of defendants' motion seeking dismissal of plaintiff's state law claims alleging violations of Sections 133 and 360-*l* of the New York General Business Law (Count V of the amended complaint), and for trademark infringement, and unfair competition based upon defendants' allegedly unauthorized use or misappropriation of the Mark, under New York common law

(Count VI of the amended complaint) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure are granted and those claims are dismissed in their entirety with prejudice for failure to state a claim for relief.[16]

However, to the extent plaintiff's common law unfair competition claim is based upon conduct other than defendants' allegedly unauthorized use of the Mark, *i.e.*, defendants' purportedly "false and/or misleading statements or representations of fact in connection with its products . . . on its websites and other marketing and promotional materials[,]" (Am. Compl., ¶ 63), and unauthorized use of plaintiff's sound recordings, (*id.*, ¶ 67), the amended complaint states a plausible claim for unfair competition under New York common law. *See generally Nadel v. Play-By-Play Toys & Novelties, Inc.*, 208 F.3d 368, 383 (2d Cir. 2000) ("Both a section 43(a)(1)(B) claim under the Lanham Act and an unfair competition claim under New York common law require that misleading or untruthful statements have been made for the purpose of commercial advertising or promoting a party's goods, services, or commercial activities."); *Sidney Frank Importing Co., Inc. v. Beam Inc.*, 998 F. Supp. 2d 193, 208-09 (S.D.N.Y. 2014) ("Misappropriation . . . concerns the taking and use of the plaintiff's property to compete against the plaintiff's own use of the same property. . . . Misappropriation is also described as taking the skills, expenditures, and labor of a competitor, . . . and misappropriating for the commercial advantage of one person [] a benefit or 'property right' belonging to another[.]" (quotations, alterations and citations omitted)); *Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*,

---

[16] In light of this determination, it is unnecessary to consider defendants' remaining contentions seeking dismissal of plaintiff's state law claims alleging violations of Sections 133 and 360-*l* of the New York General Business Law and for trademark infringement, and unfair competition based upon defendants' allegedly unauthorized use of the Mark, under New York common law.

No. 08-cv-0442, 2016 WL 815205, at *8 (S.D.N.Y. Feb. 29, 2016) ("New York courts recognize an incalculable variety of illegal practices falling within the unfair competition rubric, calling it a broad and flexible doctrine that depends more upon the facts set forth than in most causes of action. . . . The doctrine has been described as encompassing any form of commercial immorality, or simply as endeavoring to reap where (one) has not sown. . . . As such, the tort is adaptable and capacious." (quotations, alterations and citation omitted)).

"To state a claim for the misappropriation theory of unfair competition, a plaintiff must allege that the defendant: (1) misappropriated the plaintiff's labors, skills, expenditures, or good will; and (2) displayed some element of bad faith in doing so." *Sidney Frank*, 998 F. Supp. 2d at 209 (quotations, alterations and citations omitted). Contrary to defendants' contention, the amended complaint pleads sufficient allegations from which a finding of bad faith may reasonably be inferred, (Am. Compl., ¶¶ 63-67). *See, e.g. Romeo*, 2016 WL 815205, at * 8 (finding that the plaintiff had established bad faith by showing that two of the defendants deliberately posted false statements critical of the plaintiff's services). Accordingly, the branch of defendants' motion seeking dismissal of plaintiff's common law unfair competition claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is denied to the extent such claim is based upon defendants' allegedly false statements and unauthorized use of plaintiff's sound recordings.[17]

---

[17] However, as set forth below, plaintiff's common law unfair competition claim based upon defendants' allegedly unauthorized use of its sound recordings is otherwise dismissed as preempted by the Copyright Act.

5. Remaining State Law Claims

    a. N.Y. Gen. Bus. Law § 349

Section 349 of the New York General Business Law "makes unlawful 'deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state.'" *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 124 (2d Cir. 2017) (quoting N.Y. Gen. Bus. Law § 349(a)). "To state a claim for a § 349 violation, 'a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.'" *Id.* (quoting *City of New York v. Smokes-Spirits.com, Inc.*, 12 N.Y.3d 616, 621, 883 N.Y.S.2d 772, 911 N.E.2d 834 (2009)); *accord Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015). "Although the statute is, at its core, a consumer protection device, . . . corporate competitors . . . have standing to bring a claim under this statute [] so long as some harm to the public at large is at issue." *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995) (quotations, alterations and citations omitted); *see also Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*, 344 F.3d 211, 218 (2d Cir. 2003) ("[A] plaintiff need neither be a consumer nor be someone standing in the shoes of a consumer to have an actionable claim under Section 349. . . . Accordingly, this court has allowed a corporation to use Section 349 to halt a competitor's deceptive consumer practices." (quotations and citations omitted)); *Boule v. Hutton*, 328 F.3d 84, 94 (2d Cir. 2003) (holding that Section 349 "allows recovery not only by consumers, but also by competitors if there is some harm to the public at large." (quotations and citation omitted)). Since the gravamen of the complaint must be consumer injury or harm to the public interest . . . [t]he critical question . . . is whether the matter affects the public interest in

New York, not whether the suit is brought by a consumer or a competitor." *Securitron*, 65 F.3d at 264; *see also Smokes-Spirits.com*, 12 N.Y.3d at 623, 883 N.Y.S.2d 772 ("[S]ection 349 is directed at wrongs against the consuming public and . . . plaintiffs must demonstrate that the complained-of acts or practices have a broader impact on consumers at large." (quotations and citation omitted)).

Contrary to defendants' contention, the factual allegations in the amended complaint are sufficient at the pleadings stage to state a plausible claim for relief under Section 349 of the New York General Business Law. Specifically, plaintiff alleges, *inter alia*, (i) that defendants "made false and/or misleading statements or representations of fact in connection with its products . . . on its websites and other marketing and promotional materials . . . relat[ing] to the inherent qualities and characteristics of Defendant's [sic] horn products, including statements regarding the loudness and the construction or materials of certain Defendants' horn products . . . [which] were material, actually deceived or had the tendency to deceive a substantial segment of the potential customers for Defendants' products, and to influence such customers' purchasing decisions[,]" (*id.*, ¶¶ 63-65); and (ii) that since "Wolo and Defendants are direct competitors in the market for horn products[,] . . . Defendants' false statements directly and proximately harmed Wolo, harmed Wolo's ability to compete with Defendants, and deprived Wolo of sales and resulting profits." (*Id.*, ¶ 66). Accordingly, the branch of defendants' motion seeking dismissal of plaintiff's claim under Section 349 of the New York General Business Law pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for relief is denied.

6. Preemption

Defendants seek dismissal of plaintiff's state law claims for misappropriation, unfair competition and unjust enrichment pertaining to defendants' purportedly unauthorized use of plaintiff's sound recordings (Count IX of the amended complaint) on the basis that they are preempted by the Copyright Act.[18]

"Section 301 of the Copyright Act expressly preempts a state law claim only if (i) the work at issue 'come[s] within the subject matter of copyright' and (ii) the right being asserted is 'equivalent to any of the exclusive rights within the general scope of copyright.'" *Forest Park Pictures v. Universal Television Network, Inc.*, 683 F.3d 424, 429 (2d Cir. 2012) (quoting 17 U.S.C. § 301(b)); *see also Barclays Capital Inc. v. Theflyonthewall.com, Inc.*, 650 F.3d 876, 892 (2d Cir. 2011) ("Title 17 U.S.C. § 301 . . . sets forth a two-part test to determine whether a state-law claim is preempted by the Copyright Act, with a further 'extra elements' exception. . . . Such a claim is preempted (i) if it seeks to vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive rights already protected by copyright law under 17 U.S.C. § 106-- the 'general scope requirement'; and (ii) if the work in question is of the type of works protected by

---

[18] In its memorandum of law in opposition to defendants' motion, plaintiff clarifies that its N.Y. Gen. Bus. Law § 349 claim is "based on Defendants' theft, copying, misappropriation, and use of Wolo's Mark[,]" (Plf. Opp. at 14); it is not based upon defendants' alleged infringement of plaintiff's copyright in the Work. Since neither that claim, nor plaintiff's common law unfair competition claim premised upon defendants' allegedly false statements, are based upon "a work of authorship fixed in a tangible medium of expression and falling within the ambit of one of the categories of copyrightable works [set forth in 17 U.S.C. §§ 102 and 103]," *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir. 2004), they do not satisfy the subject matter requirement for preemption. Accordingly, the branch of defendants' motion seeking dismissal of plaintiff's N.Y. Gen. Bus. Law § 349 and common law unfair competition claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure as preempted by the Copyright Act is denied.

the Copyright Act under 17 U.S.C. §§ 102 and 103—the 'subject matter requirement.'"
(quotations and citation omitted)).

### a. Subject Matter Requirement

"The subject matter requirement is satisfied if the claim applies to a work of authorship fixed in a tangible medium of expression and falling within the ambit of one of the categories of copyrightable works [set forth in 17 U.S.C. §§ 102 and 103]." *Briarpatch*, 373 F.3d at 305; *see also Star Athletica, LLC v. Varsity Brands, Inc.*, --- U.S. ---, 137 S. Ct. 1002, 1008, 197 L. Ed. 2d 354 (2017) ("The first element of a copyright-infringement claim is ownership of a valid copyright. . . . A valid copyright extends only to copyrightable subject matter. . . . The Copyright Act of 1976 defines copyrightable subject matter as original works of authorship fixed in any tangible medium of expression." (quotations and citations omitted)). "Works of authorship" include, *inter alia*, sound recordings, 17 U.S.C. § 102(a)(7), which are defined as "works that result from the fixation of a series of musical, spoken, or other sounds, but not including the sounds accompanying a motion picture or other audiovisual work, regardless of the nature of the material objects, such as disks, tapes, or other phonorecords, in which they are embodied." *Id.*, § 101.

"The *sine qua non* of copyright is originality. To qualify for copyright protection, a work must be original to the author." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 345, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991). "Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." *Id.*; *see also*

*Scholz Design, Inc. v. Sard Custom Homes, LLC*, 691 F.3d 182, 186 (2d Cir. 2012) ("To qualify for copyright protection, a work must be original-- that is, it must be independently created by the author and possess at least some minimal degree of creativity." (quotations and citation omitted)). "[T]he requisite level of creativity is extremely low; even a slight amount will suffice." *Feist*, 499 U.S. at 345, 111 S. Ct. 1282; *see also Scholz*, 691 F.3d at 186 ("It is black-letter law. . . that courts accept as protected any work which by the most generous standard may arguably be said to evince creativity." (quotations and citation omitted)). "Originality does not signify novelty[.]" *Feist*, 499 U.S. at 345, 111 S. Ct. 1282. "[T]he only requirement for copyrightability of a work is that it 'possesses at least some minimal degree of creativity … no matter how crude, humble or obvious it might be.'" *Scholz*, 691 F.3d at 186-87 (ellipsis in original) (quoting *Feist*, 499 U.S. at 345, 111 S. Ct. 1282).

Contrary to plaintiff's contention that its "simple sound recordings . . . lack the requisite creativity to be protected by copyright[,]" (Plf. Opp. at 14-15), the sound recordings of plaintiff's horns possess the minimal degree of creativity required for copyrightability. The amended complaint alleges, *inter alia*, that the sound recordings "were commissioned, paid for, and made specifically for Wolo, for Wolo's exclusive use and ownership[,]" (Am. Compl., ¶ 67); that plaintiff, "at its own cost and effort, commissioned the professional sound recordings of certain of its horns[,]" (*id.*, ¶ 152); and that "[a]s part of the recording process, Wolo elected how many times to sound its horns and for how long to sound its horns, giving each sound recording a unique 'finger print.'" (*id.*, ¶ 154). Such "choices as to selection and arrangement, . . . made independently by the compiler and entail[ing] a minimal degree of creativity, are sufficiently original that Congress may protect such compilations through the copyright laws." *Feist*, 499

U.S. at 348, 111 S. Ct. 1282. In other words, since plaintiff's sound recordings feature an original selection, coordination or arrangement of the sounds of its horns, Count IX of the amended complaint involves an original "work of authorship fixed in a tangible medium of expression and falling within the ambit of one of the categories of copyrightable works [set forth in 17 U.S.C. § 102(a)]." *Briarpatch*, 373 F.3d at 305. Accordingly, the subject matter requirement for preemption is satisfied.

### b.  General Scope Requirement

With respect to the general scope requirement, Section 106 of the Copyright Act "gives copyright owners the exclusive rights, among other things, to reproduce a copyrighted work, to prepare derivative works, to distribute copies of the work to the public, . . . to display the work publicly[,]" *Forest Park*, 683 F.3d at 429 (citing 17 U.S.C. § 106), and to perform the work publicly. 17 U.S.C. § 106; *see also Barclays*, 650 F.3d at 893. "A state law right is equivalent to one of the exclusive rights of copyright if it may be abridged by an act which, in and of itself, would infringe one of the exclusive rights." *Forest Park*, 683 F.3d at 429 (quotations and citation omitted); *accord Barclays*, 650 F.3d at 893. "But if an extra element is required instead of or in addition to the acts of reproduction, performance, distribution or display, in order to constitute a state-created cause of action, there is no preemption." *Forest Park*, 683 F.3d at 429 (quotations and citation omitted); *see also Briarpatch*, 373 F.3d at 305-06 ("[T]he state law claim must not include any extra elements that make it qualitatively different from a copyright infringement claim."); *Baiul v. NBC Sports, a div. of NBCUniversal Media LLC*, 708 F. App'x 710, 712 (2d Cir. Sept. 7, 2017), *cert. denied*, 138 S. Ct. 1299, 200 L. Ed. 2d 502 (2018) (summary order) ("A

state law claim regarding a work of the type protected by the Copyright Act may proceed only if the claim contains extra elements that make it qualitatively different from a copyright infringement claim." (quotations and citation omitted)). "To determine whether a claim is qualitatively different, [courts in this Circuit] look at what the plaintiff seeks to protect, the theories in which the matter is thought to be protected and the rights sought to be enforced." *Briarpatch*, 373 F.3d at 306 (quotations, alterations and citation omitted).

Plaintiff conclusorily asserts that "each of the specific causes of action in Count IX [of the amended complaint] have elements not found in a claim for copyright infringement[,]" (Plf. Opp. at 15), without indicating what those elements are. Contrary to plaintiff's contention, its state law claims for misappropriation, unfair competition and unjust enrichment pertaining to defendants' purportedly unauthorized use of plaintiff's sound recordings, *i.e.*, their "posting" of the sound recordings on their websites, (Am. Compl., ¶¶ 67, 155), "assert[] rights equivalent to those protected within the general scope" of the Copyright Act[,]" *Urbont v. Sony Music Entm't*, 831 F.3d 80, 93 (2d Cir. 2016), and, thus, are preempted by the Copyright Act. *See e.g. Betty, Inc. v. PepsiCo, Inc.*, 283 F. Supp. 3d 154, 164-65 (S.D.N.Y. 2017) (dismissing the plaintiff's state law claims for unjust enrichment, conversion and unfair competition based upon the defendant's alleged distribution and reproduction of the plaintiff's copyrighted material as preempted by the Copyright Act); *Wolstenholme*, 271 F. Supp. 3d at 645 (dismissing the plaintiff's state law claims for unfair competition and misappropriation as preempted by the Copyright Act since the plaintiff was "merely seeking to enforce her exclusive right to reproduce, distribute and display her protectable works, and those rights are protected by the Copyright Act."); *Kaplan v. Stock Market Photo Agency, Inc.*, 133 F. Supp. 2d 317, 328

(S.D.N.Y. 2001) (finding that the plaintiff's state law claim under "the misappropriation branch of unfair competition" based upon the copying of the plaintiff's work was preempted by the federal copyright laws). Accordingly, the branch of defendants' motion seeking dismissal of plaintiff's state law claims for misappropriation, unfair competition and unjust enrichment based upon defendants' purportedly unauthorized use of the sound recordings (Count IX of the amended complaint) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted and those claims are dismissed in their entirety with prejudice as preempted by the Copyright Act.

IV.    Conclusion

For the reasons set forth above, (a) Count IV of the amended complaint is voluntarily dismissed pursuant to Rule 41(a) of the Federal Rules of Civil Procedure; (b) the branch of defendants' motion seeking dismissal of plaintiff's claims against Feldman pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure is granted and plaintiff's claims against Feldman are dismissed in their entirety for lack of personal jurisdiction; (c) the branches of defendants' motion seeking dismissal of (i) Counts II and III of the amended complaint, (ii) plaintiff's state law claims under N.Y. Gen. Bus. Law §§ 133 and 360-*l* and for common law trademark infringement, and (iii) plaintiff's claim for statutory damages under 17 U.S.C. § 504(c), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, are granted to the extent set forth herein, and those claims are dismissed in their entirety with prejudice for failure to state a claim for relief; (d) the branch of defendants' motion seeking dismissal of Count IX of the amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure as

preempted by the Copyright Act is granted and Count IX of the amended complaint is dismissed in its entirety with prejudice as preempted by the Copyright Act; (e) the branch of defendants' motion seeking dismissal of plaintiff's remaining common law claims for unfair competition pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted to the extent that plaintiff's common law unfair competition claim based upon defendants' allegedly unauthorized use or misappropriation of the Mark is dismissed in its entirety with prejudice, and that branch of defendants' motion is otherwise denied; and (f) defendants' motion is otherwise denied. For the sake of clarity, the following claims remain in this case: (i) plaintiff's claim for copyright infringement of the Work (Count I of the amended complaint); (ii) plaintiff's claim for deceptive acts and practices in violation of N.Y Gen. Bus. Law § 349 (Count V of the amended complaint); (iii) plaintiff's claims for false advertising and misrepresentations under Section 43(a)(1)(B) of the Lanham Act (Counts VII and VIII of the amended complaint); and (iv) plaintiff's common law claim for unfair competition based upon defendants' allegedly false statements.

SO ORDERED.

_____/s/_____
Sandra J. Feuerstein
United States District Judge

Dated: November 7, 2018
      Central Islip, New York